___



**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: January 26, 2021**

The Order of the Court is set forth below. The docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| **WILLIAM BYRD MCHENRY, JR.,** | **CASE NO. 20-00268-NPO** |
| **DEBTOR.** | **CHAPTER 7** |

| | |
|---|---|
| **ROBERT BOND, BIRDIE COOPERWOOD, BLAKE ENDRIS, CRAIG ENDRIS, JOHN ENDRIS, EMILY ENDRIS, PAT GALLINA, COLONEL JAMES GARNER, MARY GARNER, HARRY GIBSON, MYNETTE GIBSON, MACEY HAWKINS, TIP JACOB, JEAN JACOB, ANNA MOOREHEAD, VICKI MOOREHEAD, JAMES NUTT, KATHY NUTT, ERIC ORTH, LORI ORTH, AND SHERRY RUSSELL, INDIVIDUALLY AND ON BEHALF OF THE ESTATE AND WRONGFUL DEATH BENEFICIARIES OF HAROLD RUSSELL** | **PLAINTIFFS** |

| | |
|---|---|
| VS. | **ADV. PROC. NO. 20-00024-NPO** |
| **WILLIAM B. MCHENRY, JR.** | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER SETTING ASIDE ENTRY OF DEFAULT AND DENYING PLAINTIFFS' REQUEST FOR DEFAULT JUDGMENT AGAINST WILLIAM BYRD MCHENRY, JR.

This matter came before the Court for telephonic hearing on January 14, 2021 (the "Hearing") on the Plaintiffs' Request for Default Judgment Against William Byrd McHenry, Jr.

(the "Motion for Default") (Dkt. 28)[1] and the proposed Judgment by Default (#28) (Dkt. 35) filed by the plaintiffs, Robert Bond, Birdie Cooperwood, Blake Endris,[2] Craig Endris, John Endris, Emily Endris, Pat Gallina, Colonel James Garner, Mary Garner, Harry Gibson, Mynette Gibson, Macey Hawkins, Tip Jacob, Jean Jacob, Anna Moorehead, Vicki Moorehead, James Nutt, Kathy Nutt, Eric Orth, Lori Orth, and Sherry Russell, individually and on behalf of the estate and wrongful death beneficiaries of Harold Russell (collectively, the "Plaintiffs"), in the Adversary Proceeding. At the Hearing, William Byrd McHenry, Jr. ("McHenry") represented himself and John F. Hawkins ("Hawkins") represented the Plaintiffs. The Plaintiffs are represented in the Adversary Proceeding by both Hawkins and Edward Gibson ("Gibson"). (Dkt. 1). In support of the Motion for Default, the Plaintiffs attached Edward Gibson's Affidavit in Support of Default (the "Affidavit") (Dkt. 28-1). The Court denied the Motion for Default from the bench and set aside the Entry of Default (the "Entry of Default") (Dkt. 29) issued by the Clerk of the Bankruptcy Court (the "Clerk"). This Opinion memorializes and supplements the Court's bench ruling.

**Jurisdiction**

This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I), (J), and (O). Notice of the Hearing was proper under the circumstances.

---

[1] Citations to the record are as follows: citations to docket entries in the above-referenced adversary proceeding (the "Adversary Proceeding") are "(Dkt. ___)"; citations to docket entries in the above-referenced bankruptcy case (the "Bankruptcy Case") are "(Bankr. Dkt. ___)"; and citations to the related adversary proceeding *Mills v. McHenry*, Adv. Proc. 20-00022-NPO (the "Receiver Adversary") are "(No. 20-00022-NPO Dkt. ___)".

[2] The Court notes that the surname Endris is sometimes spelled "Endriss." The Court makes note of this discrepancy but does not find it of consequence with respect to the Motion for Default.

**Facts**

**I.     Background**

The Adversary Proceeding arises out of an attempt by defrauded investors to recoup their losses from McHenry who they allege personally recruited them to invest in a Ponzi scheme.[3]  A brief overview of other litigation relating to the Ponzi scheme is necessary to provide context to the Court's decision on the Motion for Default.

**A.     Madison Timber Ponzi Scheme**

From 2011 until April 2018, Arthur Lamar Adams ("Adams"), through his wholly-owned company, Madison Timber Properties, LLC ("Madison Timber"), operated a Ponzi scheme. *United States v. Adams*, No. 3:18-cr-00088-CWR-LRA (Dkt. 1) (S.D. Miss. May 1, 2018). Investors in Madison Timber were led to believe that their money was used to purchase timber from landowners; that Madison Timber sold the timber to lumber mills at a higher price; and that Madison Timber repaid investors from the profits.  The investments appeared to be secured by timber deeds and cutting agreements, but the documents were fake.  There were no timber rights or contracts with lumber mills except in limited instances.  Adams used the invested funds for his personal benefit and to make monthly payments to other investors on previously existing notes, a classic Ponzi scheme (the "Madison Timber Ponzi Scheme").  Adams pleaded guilty to the federal crime of wire fraud and was sentenced to a term of imprisonment of 235 months.  *United States v. Adams*, No. 3:18-cr-00088-CWR-LRA (Dkt. 11, 21) (S.D. Miss. May 9, 2018).

**B.     SEC Litigation**

The Securities and Exchange Commission filed a complaint against Adams and Madison

---

[3] *Cunningham v. Brown*, 265 U.S. 1, 7-8 (1924) (describing pyramid scheme of Charles Ponzi, whose name later became synonymous with investment fraud).

Timber in the U.S. District Court for the Southern District of Mississippi (the "District Court"), alleging securities fraud in a matter styled *Securities and Exchange Commission v. Arthur Lamar Adams and Madison Timber Properties, LLC*, No. 3:18-cv-00252-CWR-FKB (the "SEC Litigation"). On June 22, 2018, the District Court issued the Order Appointing Receiver, appointing Alysson Mills to serve as the Receiver (the "Receiver") for Adams's and Madison Timber's estates. *See Secs. & Exch. Comm'n v. Adams*, No. 3:18-cv-00252-CWR-FKB (Dkt. 33) (S.D. Miss. June 22, 2018).

### C. Recruiter Litigation

On October 1, 2018, the Receiver filed a lawsuit against McHenry and his wholly-owned company, First South Investments, LLC ("First South"), in the District Court in a matter styled *Alysson Mills v. Michael D. Billings*, *et al.*, No. 3:18-cv-00679 (S.D. Miss) (the "Recruiter Litigation"), seeking the return of more than $16 million paid in commissions by Madison Timber.[4] The Receiver alleged that between 2010 and April 2018, McHenry recruited twenty (20) investors for Madison Timber for which he received commissions, through First South, totaling $3,473.320.00. The Receiver asserted claims against McHenry and First South under Mississippi's Uniform Fraudulent Transfer Act, Mississippi Code Annotated § 15-3-101 and, in the alternative, claims for unjust enrichment. *Mills v. Billings*, No. 3:18-cv-00679-CWR-FKB (Dkt. 1) (S.D. Miss. Oct. 1, 2018).

On August 16, 2019, the District Court entered an Order (the "District Court Judgment"), granting the Receiver's motion for summary judgment on her fraudulent transfer claims against McHenry and First South. *Mills v. Billings*, No. 3:18-cv-00679-CWR-FKB, 2019 WL 3877853,

---

[4] The Receiver named two other individuals along with their respective companies as defendants in the Recruiter Litigation. She eventually reached a settlement with all defendants except McHenry and First South.

at *1 (S.D. Miss. Aug. 16, 2019). Finding that the transfers were made as part of the Madison Timber Ponzi Scheme, the District Court entered summary judgment against McHenry and First South in the amount of $3,472,320.00. *Id.* at *2.

## II.     Bankruptcy Case

On January 24, 2020, McHenry filed a voluntary petition for individuals (Bankr. Dkt. 1) under chapter 7 of the U.S. Bankruptcy Code. In his bankruptcy schedules, McHenry identified the Receiver as a creditor holding an unsecured claim of $3,472,320.00. (Bankr. Dkt. 26 at 5). McHenry did not disclose any other claims arising from the Madison Timber Ponzi Scheme in his schedules.

### A.     Receiver Adversary

On April 23, 2020, the Receiver filed the Adversary Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523 and § 727 (No. 20-00022-NPO Dkt. 1). The Receiver alleged that McHenry's $3,473,320.00 debt is nondischargeable as a debt obtained by false pretenses, false representations, and/or actual fraud under 11 U.S.C. § 523(a)(2)(A)[5]; arising from McHenry's fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4); and/or arising from McHenry's willful and malicious injury to another under § 523(a)(6). She also alleged that the discharge of McHenry's debts to all creditors is barred for concealing, falsifying, or failing to keep information from which his financial condition might be ascertained under § 727(a)(3); for knowingly and fraudulently making a false oath or account under § 727(a)(4); and

---

[5] Hereinafter, all code sections refer to the Code found at Title 11 of the United State Code, unless otherwise noted.

for knowingly and fraudulently making a false account under § 727(a)(5). (No. 20-00022-NPO Dkt 1).[6]

### B. Adversary Proceeding Background

On April 24, 2020, Robert Bond, Birdie Cooperwood, Blake Endris, Craig Endris, John Endris, Emily Endris, Pat Gallina, Colonel Garner, Mary Garner, Harry Gibson, Mynette Gibson, Macey Hawkins, Tip Jacob, Jean Jacob, Anna Moorehead, Vicki Moorehead, James Nutt, Sydney Nutt, Eric Orth, Lori Orth, and Sherry Russell (collectively, the "Original Plaintiffs") filed the Adversary Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 523 and 11 U.S.C. § 727 (the "Original Complaint") (Dkt. 1). The facts alleged in the Original Complaint are similar to those alleged by the Receiver in the Receiver Adversary and the Recruiter Litigation. There are additional facts in the Original Complaint about McHenry's alleged role in soliciting funds from the Original Plaintiffs and his purported knowledge that Adams was operating a Ponzi scheme. The Original Plaintiffs acknowledge the District Court Judgment but contend that it "does not include the satisfaction of damages suffered by the [Original] Plaintiffs for claims arising from McHenry's conduct which are not the province of the Receiver." They ask the Court to award "all damages available at law which are not within the authority of the Receiver and which are not protected by the Receiver." (Dkt. 1 at 20). They also ask the Court to find that McHenry "is not entitled to a discharge of any debt owed to the [Original] Plaintiff[s]" because: (1) "the money that he obtained from the [Original] Plaintiff[s] was obtained by fraud"; (2) "injuries including but not limited to emotional distress were inflicted upon the [Original] Plaintiffs intentional [*sic*],

---

[6] On December 1, 2020, the Receiver filed the Motion for Summary Judgment (No. 20-00022-NPO Dkt 27) in the Receiver Adversary that is being held in abeyance pending final resolution of the Re-urged Motion for Sanctions for Contempt of Court Order. (Bankr. Dkt. 112, 132).

willfully, and with malice"; (3) "he has refused to produce records of his business"; and (4) "he failed to disclose financial accounts owned by him." (Dkt. 1 at 21-22). In support of their claims, the Original Plaintiffs rely on § 523(a)(2)(A), § 523(a)(6), § 727(a)(3), and § 727(a)(4).

On April 28, 2020, the Clerk issued the Summons in an Adversary Proceeding (the "First Summons") (Dkt. 5) to the Original Plaintiffs for service on McHenry. The First Summons set May 28, 2020 as the deadline for McHenry to file an answer or otherwise respond to the Original Complaint. (Dkt. 5). Rule 4(m) of the Federal Rules of Civil Procedure ("Rule 4(m)"), as made applicable by Rule 7004 of the Federal Rules of Bankruptcy Procedure, set a time limit of ninety (90) days for service of the Original Complaint.

    **1.    Amended Complaint**

On May 19, 2020, the Plaintiffs filed the First Amended Adversary Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 523 and 11 U.S.C. § 727 (the "Amended Complaint") (Dkt. 11). The Amended Complaint differs from the Original Complaint in that it changes the name of the plaintiff "Sydney Nutt" to plaintiff "Kathy Nutt" but maintains the same address for service of process (Dkt. 11 ¶ 28), adds Sherry Russell on behalf of "the Estate of and wrongful death beneficiaries of Harold Russell" as an additional plaintiff but maintains the same address for service of process (Dkt. 11 ¶ 31), and changes the name of the plaintiff "Colonel Garner" to "Colonel James Garner" in the caption but not in the body of the Amended Complaint (Dkt. 11 ¶ 17). The Amended Complaint also makes minor, stylistic edits (Dkt. 11 ¶¶ 40, 41, 58, 78) and corrections (Dkt. 11 ¶¶ 37, 56, 61) to the Original Complaint. The only substantive change in the relief sought is the Plaintiffs' request that the Court "[g]rant the Plaintiff's [*sic*] leave to pursue their claims against McHenry and others in state court." (Dkt. 11 at 22).

On May 20, 2020, the Clerk issued the Summons in an Adversary Proceeding (the "Second Summons") (Dkt. 12) to the Plaintiffs for service on McHenry. The Second Summons set June 19, 2020 as the deadline for McHenry to file an answer or otherwise respond to the Amended Complaint. (Dkt. 12).

### 2. Answer

On June 16, 2020, before he was formally served with a copy of either the Original Complaint or the Amended Complaint, McHenry filed the Answer to Adversary Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. : 523 [*sic*] and 11 U.S.C. : 727 [*sic*] (the "Answer") (Dkt. 13) denying "any and all allegations, and or relief, as set forth and being sought in this Adversary Complaint to determine discharge of the debt cited therein." (Dkt. 13). The Answer does not respond to the substantive allegations in each numbered paragraph but consists of a general denial. McHenry attached to the Answer a copy of the indictment (the "Indictment") (Dkt. 13 at 4-11) returned by the federal grand jury in *United States v. McHenry*, No. 3:19-cr-00020-CWR-LRA (S.D. Miss. Jan. 25, 2019) charging him with securities fraud and wire fraud and a copy of the Judgment on Jury Verdict (the "Verdict") (Dkt. 13 at 12-13) demonstrating that the jury found in his favor on all criminal charges. The Answer uses a title that suggests an intent by McHenry to respond to the Original Complaint, but its caption includes the Plaintiffs, indicating an intent to respond to the Amended Complaint. (Dkt. 13).

### 3. Discovery

On June 17, 2020, the Court entered the Scheduling Order (Dkt. 15) setting deadlines for the service of initial disclosures and the completion of fact discovery as well as other deadlines in the Adversary Proceeding. On June 24, 2020, McHenry filed the Disclosure as Required by Rule 7026(a)(1) Federal Rules of Bankruptcy Procedure (the "McHenry's Disclosures") (Dkt. 17) to

which he attached the Indictment and Verdict as exhibits. On July 3, 2020, the Plaintiffs filed the Notice of Service of Initial Disclosures (Dkt. 18) indicating that the Plaintiffs had served their initial disclosures upon McHenry on that date.

### 4. Motion to Deem Service Waived

The Plaintiffs failed to perfect service of the First Summons and Original Complaint within the ninety (90)-day time period required by Rule 4(m). Concerned about the approaching ninety (90)-day time limit to serve the Second Summons and Amended Complaint, the Plaintiffs on July 23, 2020, filed the Motion to Deem any Affirmative Defense to Service of Process Waived or in the Alternative for Enlargement of Time to Complete Service. (the "Motion to Deem Service Waived") (Dkt. 19) asking the Court to declare that McHenry had waived "any defense to the service of process" or "in the alternative enlarge the time to complete service." (Dkt. 19). The Plaintiffs alleged that McHenry had answered "the adversary complaint filed against him" on June 16, 2020. (Dkt. 19 ¶¶ 5-6). The Plaintiffs further alleged that McHenry did not raise the defense of imperfection of service of process in the Answer. (Dkt. 19 ¶¶ 6-7). The Plaintiffs, therefore, "request that this court [enter] an order deeming service upon William Beeman [*sic*] [p]erfected."[7] (Dkt. 19 ¶ 10). Alternatively, the Plaintiffs argued "that ninety (90) [days] has run since the filing of the original complaint, but only about sixty (60) days since the filing of the First Amended Complaint. To the extent necessary and out of an abundance of caution, the Plaintiffs request that this court extend the time to perfect service of the First Amended Complaint by 30 days or until August 22, 2020." (Dkt. 19 ¶ 11). The Plaintiffs also filed the Memorandum of Law in Support of Plaintiffs' Motion to Deem any Affirmative Defense to Service of Process Waived or in the

---

[7] The reference to William Beeman rather than to McHenry appears to be a cut-and-paste error.

Alternative for Enlargement of Time to Complete Service (Dkt. 20) arguing that McHenry received actual notice within the ninety (90) days prescribed by law and that McHenry did not effectively raise the defense of improper service of process against the Plaintiffs in the Answer.

A telephonic hearing on the Motion to Deem Service Waived was set for August 24, 2020 (the "Hearing on Service"). (Dkt. 21). The Notice of Hearing and Deadlines (the "Notice of Hearing on Service") (Dkt 21) issued by the Clerk provided:

> If you do not want the Court to grant the Motion [to Waive Service], or if you want the Court to consider your views on the Motion [to Waive Service], you or your attorney must file a written response explaining your position so that the Court receives it on or before August 17, 2020.

(Dkt. 21). The Bankruptcy Noticing Center (the "BNC") sent the Notice of Hearing on Service and a copy of the Motion to Deem Service Waived to McHenry on July 29, 2020 by first-class mail at his address of record and also electronically at his e-mail address. (Dkt. 22). McHenry did not file a written response to the Motion to Deem Service Waived. Before the Hearing on Service, McHenry was formally served with the Second Summons and a copy of the Amended Complaint on August 9, 2020. (Dkt. 23).

### a. Hearing on Service

At the Hearing on Service, McHenry, acting without the assistance of counsel (*pro se*), appeared on his own behalf and Gibson appeared on behalf of the Plaintiffs. McHenry confirmed that he received the BNC Notice of Hearing on Service and the attached Motion to Deem Service Waived by first-class mail before the deadline had expired to file a response but admitted that he did not respond to the Motion to Deem Service Waived or ask the Court for additional time to file a response to the Motion to Deem Service Waived. (Hr'g on Service at 1:38:00-1:38:55 (Aug. 24,

2020)).[8]  Since no response to the Motion to Deem Service Waived was filed, the Court granted the Motion to Deem Service Waived.[9]  Pursuant to Local Rule 5005-1(a)(2)(D)(i) of the Uniform Local Bankruptcy Rules for the Northern and Southern Districts of Mississippi, the Court signed the proposed Order (the "Order on Service") (Dkt. 25) prepared by Gibson.

### b. Order on Service

The Order on Service granted in part and denied in part the Motion to Deem Service Waived.  Specifically, the Order on Service held that McHenry waived his right to raise the affirmative defense of improper service of process of the Original Complaint. (Dkt. 25).  Indeed, the Plaintiffs never filed a proof of service indicating that McHenry was served with a copy of the Original Complaint.  The Order on Service also held that McHenry waived the right to raise the affirmative defense of improper service because he did not include it in the Answer and did not file a response to the Motion to Deem Service Waived.[10]  The Order on Service denied as moot the Plaintiffs' request to enlarge the time to complete service of the Amended Complaint given that McHenry was personally served with the Second Summons and a copy of the Amended Complaint on August 9, 2020, which was well within the ninety (90)-day period. (Dkt. 23, 25).  The Plaintiffs also included in the Order on Service that McHenry "shall file an Answer to the

---

[8] The Hearing on Service was not transcribed.  Citations are to the timestamp of the audio recording.

[9] At the Hearing on Service, Gibson stated that he sent the Motion to Deem Service Waived by U.S. mail, return receipt requested, but did not have the return receipt in front of him.  (Hr'g on Service at 1:36:10-1:36:17 (Aug. 24, 2020)).  McHenry asked if he would have had to sign for the Motion to Deem Service Waived and suggested he had not signed for any documents.  (Hr'g on Service at 1:40:00-1:40:12 (Aug. 24, 2020)).

[10] McHenry stated at the Hearing on Service that he first received notice of the Adversary Proceeding through the Federal Judiciary's Public Access To Court Electronic Records ("PACER") system, which allows an individual using the Internet to access the bankruptcy court's public database. (Hr'g at 1:38:00-1:38:55 (Aug. 24, 2020)).

First Amended Complaint within fourteen (14) days of the date of this Order." (Dkt. 25). On August 26, 2020, the Court signed the Order on Service. (Dkt. 25).

### III. Entry of Default & Motion for Default

When McHenry failed to "file an Answer to the First Amended Complaint within fourteen (14) days" of the entry of the Order on Service, the Plaintiffs filed the Application to the Clerk for Entry of Default (the "Request for Default") (Dkt. 27) on November 6, 2020, alleging that McHenry had failed to "plead, answer or otherwise defend" the Adversary Proceeding. On that same day, the Plaintiffs also filed the Motion for Default alleging that McHenry has failed to "answer or otherwise defend against" the Amended Complaint.

#### A. Entry of Default

In support of their Request for Default, the Plaintiffs attached the Edward Gibson's Affidavit in Support of Default (the "Gibson Affidavit") (Dkt. 27-1).[11] In the Gibson Affidavit, Gibson states that McHenry was served with the Amended Complaint on August 9, 2020 and that McHenry did not object to Gibson's representation to the Court at the Hearing on Service that the Plaintiffs had perfected service of the Amended Complaint. (Dkt. 27-1 ¶ 4). Gibson also states that McHenry had failed to file a response to the Amended Complaint by the deadline set forth in the Order on Service. (Dkt. 27-1 ¶ 5). On November 16, 2020, the Clerk entered the Entry of Default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure ("Rule 55"), as made applicable by Rule 7055 of the Federal Rules of Bankruptcy Procedure.

#### B. Motion for Default

The Motion for Default asks the Court to enter a default judgment against McHenry because he "failed to answer or otherwise defend against the Plaintiffs' [Amended Complaint]."

---

[11] The Gibson Affidavit is identical to the Affidavit attached to the Motion for Default.

(Dkt. 28). The Plaintiffs ask that the Court award "the relief set forth in the Plaintiffs' Adversary Complaint" without distinguishing between the Original Complaint (Dkt. 1) and the Amended Complaint (Dkt. 11). The Plaintiffs later explain that "[a]s in the original complaint, the Plaintiff[s] [seek] the following relief: [a] Declaring that McHenry's debts are non-dischargeable under 11 U.S.C. § 523 and 11 U.S.C. § 727; [b] Award any and all attorney's fees, costs, and interest allowed under the contract or at law; [c] Lift any stay entered by the bankruptcy court in favor of McHenry; [d] Grant the Plaintiffs' leave to pursue their claims against McHenry and others in state court; and [e] Award any other relief necessary to affect justice and equity." (Dkt. 11 at 22). The Plaintiffs acknowledge that McHenry filed the Answer but assert that the Answer was filed to the Original Complaint rather than to the Amended Complaint.

### C. Answer to Amended Complaint

On November 19, 2020, three (3) days after the Clerk entered the Entry of Default, McHenry filed the Answer to First Amended Adversary Complaint Objecting to Discharge Pursuant to 11 U.S.C. : 523 [*sic*] and 11 U.S.C. : 727 [*sic*] (Previously Filed with Date Stamp Attached) (the "Answer to Amended Complaint") (Dkt. 32). The Answer to Amended Complaint is substantively the same as the Answer but also asks the Court to "deny Plaintiff's [*sic*] leave to pursue claims against McHenry and that the [C]omplaint be held in abeyance pending determination of discharge." (Dkt. 32). To support his position that he already had filed an answer to the Amended Complaint, McHenry attached a receipt dated June 24, 2020 from the U.S. Postal Service indicating payment of $7.75 for the delivery of a flat-rate envelope to an address in Bay Saint Louis, Mississippi (the "Receipt") (Dkt. 32 at 5). McHenry also attached the first page of a document stamped "filed" by the Clerk on June 24, 2020, which appears to be a copy of the first page of McHenry's Disclosures. (Dkt. 32 at 6). That same day, McHenry also filed the Answer

to First Amended Adversary Complaint Objecting to Discharge Pursuant to 11 U.S.C. : 523 [*sic*] and 11 U.S.C. : 727 [*sic*] (the "Amended Answer to Amended Complaint") (Dkt. 33). The Amended Answer to Amended Complaint is the same as the Answer to Amended Complaint but does not include the allegation that an answer previously had been filed. Also, the Receipt and document with the Clerk's stamped-filed date of June 24, 2020 are not attached to the Amended Answer to Amended Complaint.

### D.     Hearing

At the Hearing on the Motion for Default, McHenry testified that he believed he had done everything he was required to do by the Court and the law by filing the Answer and McHenry's Disclosures. (Hr'g at 10:10:30-10:10:42 (Jan. 14, 2021)).[12] When he read the Plaintiffs' allegation that he had not fulfilled his obligations, he filed the Answer to Amended Complaint. (Hr'g at 10:10:50-10:11:11 (Jan. 14, 2021)). Hawkins argued that "McHenry was on the August 26, 2020 call, your honor directed him to file an answer to the Amended Complaint — the adversary complaint, and he didn't do that—so the Motion for Default Judgment is procedurally proper and the Court should grant it." (Hr'g at 10:11:40-10:12:09 (Jan. 14, 2021)).

### Discussion

Rule 55(c) grants the court discretion to set aside an entry of default "[f]or good cause shown." FED. R. CIV. P. 55(c). "The requirement of 'good cause' has generally been interpreted liberally." *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003) (quotation omitted). "[E]ntries of default are serious; where there are no intervening equities, any doubt should . . . be resolved in favor of the movant to the end of securing a trial upon the merits." *Id.* (quotation omitted).

---

[12] The Hearing was not transcribed. Citations are to the timestamp of the audio recording.

There is no fixed standard that can anticipate all situations that would justify a finding of good cause for a party's failure to answer a complaint. The Fifth Circuit Court of Appeals considers the following factors useful in identifying circumstances that would warrant a finding of good cause: (1) whether the failure to act was willful; (2) whether setting aside the default would prejudice the other side; and (3) whether a meritorious defense has been presented. *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). These factors are not exclusive. *Id.* Other factors may be considered, such as whether a party acted expeditiously to correct the default. *Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181, 184 (5th Cir. 1982). At bottom, the decision whether to grant relief from a default is informed by equitable principles.

"When the defaulting party is a *pro se* defendant, the Court must be especially hesitant to enter a default judgment." *Ocwen Loan Servicing, LLC v. Heiberg*, 4:17-cv-00690, 2020 WL 957640, at *3 (E.D. Tex. Feb. 4, 2020) (quoting *Interscope Recs. v. Benavides*, 241 F.R.D. 458, 461 (W.D. Tex. 2006)). As the Second Circuit Court of Appeals held in *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993), "[a] party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge." *Id.* at 96 (internal citation omitted). Mindful of this heightened concern for the protection of McHenry's rights, the Court considers whether good cause exists to set aside the Entry of Default. *Id.*

### 1. Reason for Default

A willful failure to defend a lawsuit alone may constitute sufficient cause for refusing to set aside an entry of default. *In re Dierschke*, 975 F.2d at 184. The burden of showing by a preponderance of the evidence that his neglect was excusable, rather than willful, rests on

McHenry.  *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 500-01 (5th Cir. 2015). Excusable neglect is not limited to omissions caused by circumstances beyond a party's control, but it does require that a defending party provide a basic explanation for the inaction that led to the default.  *McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970).  Parties, either individually or through their counsel, are charged with a "duty of diligence to inquire about the status of a case."  *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985).

The Court reviews the sequence of events culminating in McHenry's default in determining whether his conduct is excusable.  The Original Plaintiffs filed the Original Complaint on April 24, 2020.  Three weeks later, the Plaintiffs filed the Amended Complaint requesting additional relief, amending the names of two (2) of the Original Plaintiffs, and adding one plaintiff.  McHenry became aware of the Adversary Proceeding after searching the PACER system. At that juncture, neither the First Summons nor the Second Summons had been formally served on McHenry, but he filed the Answer anyway on June 16, 2020.  Then, on August 9, 2020, the Second Summons with an attached copy of the Amended Complaint was formally served on McHenry.  The Court finds that McHenry's actions in filing the Answer before he was formally served with notice of the Adversary Proceeding demonstrates his intention to participate in the litigation.

On the last day of the ninety (90)-day period to serve McHenry with a copy of the Original Complaint, the Plaintiffs filed the Motion to Deem Service Waived.  McHenry's appearance at the Hearing on Service without having filed a response or a request for additional time to file a response to the Motion to Deem Service Waived suggests he did not understand the proper procedure and again demonstrates that McHenry intended to participate in the Adversary Proceeding rather than evade it.  The Court finds that McHenry's lack of understanding of the legal

process when he clearly intended to fulfill his obligations as a litigant weighs against the remedy of default.

In the Motion for Default and at the Hearing, Hawkins implied that the Court "directed" McHenry to file an answer to the Amended Complaint at the Hearing on Service. Although the Order on Service, which Gibson drafted, required McHenry to file an answer to the Amended Complaint within fourteen (14) days, the Motion to Deem Service Waived did not include this requirement and it was not requested by the Plaintiffs or discussed at the Hearing on Service. The Court appreciates why McHenry, acting *pro se,* could understand that the Answer filed previously complied with the Order on Service. Indeed, McHenry filed the Answer after the Amended Complaint was filed, and arguably the Answer is responsive to the Amended Complaint, rather than the Original Complaint. Moreover, in documents filed in the Adversary Proceeding, counsel uses at least ten (10) different terms interchangeably to refer to either the Original Complaint (Dkt. 1) and the Amended Complaint (Dkt. 11) including: Complaint, First Amended Complaint, complaint, first adversary proceeding, adversary complaint, adversary proceeding, Original Complaint, Plaintiffs' Adversary Complaint, original complaint, and First Amended Adversary Complaint. The use of ten (10) different terms is confusing, and it helps explain why McHenry could reasonably believe he had filed an answer to the Amended Complaint.

Further contributing to the confusion is McHenry's own use of vague language. The Answer does not indicate if it responds to the Original Complaint or to the Amended Complaint. Counsel for the Plaintiffs argues that it was an answer to the Original Complaint, but the Answer lists the Plaintiffs named in the Amended Complaint rather than the Original Plaintiffs named in the Original Complaint. Under these facts, the Court finds McHenry's neglect with respect to a timely-filed answer to the Amended Complaint is excusable.

The Court is also persuaded by McHenry's haste in remedying the default. Although McHenry did not file a motion or pleading with the Court to set aside the Entry of Default and did not file a separate, written response to the Motion for Default, McHenry filed the Answer to Amended Complaint and Amended Answer to Amended Complaint three (3) days after the Entry of Default. By filing these pleadings, McHenry clearly did not intend to forfeit his rights. Although the Amended Answer to Amended Complaint is an untimely attempt to comply with the Order on Service, the Court finds that Plaintiffs should not be allowed to take advantage of McHenry's lack of legal knowledge. The Court finds that the first factor weighs in favor of setting aside the Entry of Default.

### 2. Prejudice

A finding of prejudice that would weigh against vacating a default generally requires more than the inconvenience of having to prove a claim. *Lacy*, 227 F.3d at 293. Moreover, the mere possibility of prejudice from delay is insufficient in itself to support a refusal to set aside a default. *Id.* Instead, a plaintiff must show that the delay "will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* (quotation omitted).

The Plaintiffs did not present any evidence of unfair prejudice. They argue that they are entitled to a default judgment against McHenry as a procedural matter. McHenry, however, did not fail to appear or defend the action against him. He filed the Answer that responds in general to the allegations asserted against him in both the Original Complaint as well as in the Amended Complaint. At this stage of the Adversary Proceeding, setting aside the Entry of Default only causes the Plaintiffs the inconvenience of having to prove their claims, which is minimal compared to the harm to McHenry. Moreover, any prejudice to the plaintiffs as a result of a delay in litigation can be mitigated by modifying the Scheduling Order (Dkt. 15). The Court is persuaded by the

preference of having a trial on the merits and the directive to protect the rights of *pro se* litigants. In the absence of any evidence by the Plaintiffs of unfair prejudice, the Court finds that the second factor weighs in favor of setting aside the Entry of Default.

### 3. Meritorious Defense

The third factor that the Fifth Circuit considers in determining whether to set aside a default is if doing so would affect the outcome of the adversary proceeding. *Beitel v. OCA, Inc. (In re OCA, Inc.)*, 551 F.3d 359, 373 (5th Cir. 2008). A meritorious defense is presented when the "factual basis is sufficient in theory to support a conclusion that there is a possibility that the outcome after trial would not mirror the default judgment." *Id.*; *see Jenkens v. Gilchrist v. Groia & Co.*, 542 F.3d 114, 122 (5th Cir. 2008). The Court finds that the other two (2) factors coupled with McHenry's status as a *pro se* litigant weigh in favor of setting aside the Entry of Default, and the Court, therefore, refrains from discussing the possible outcomes at trial. *In re Dierschke*, 975 F.2d at 184 (treating the three (3) factors in the disjunctive).

### Conclusion

The Court finds that good cause exists to set aside the Entry of Default and deny the Motion for Default. The imprecise references to pleadings by both the Plaintiffs and McHenry create an ambiguity in the timeline, and McHenry's status as a *pro se* litigant explains his failure to understand his obligation in the Order on Service to respond to the Amended Complaint. The Court finds that this misunderstanding is excusable, and McHenry should not be denied an opportunity to participate in the Adversary Proceeding. Moreover, the Plaintiffs did not provide any evidence of prejudice by being required to prove the claims in the Amended Complaint. The modification of the Scheduling Order (Dkt. 15) will alleviate any prejudice to the Plaintiffs arising out of any delay in the litigation. The default procedures under Rule 55 help maintain the orderly

and efficient administration of justice, but the remedy of default is unwarranted here given McHenry's participation in the litigation and the absence of prejudice to the Plaintiffs. The Court, therefore, finds that the Entry of Default should be set aside, the Motion for Default should be denied, and the Scheduling Order (Dkt. 15) should be amended.

      IT IS, THEREFORE, ORDERED that the Motion for Default is hereby denied.

      IT IS FURTHER ORDERED that the Entry of Default is set aside.

      IT IS FURTHER ORDERED that the Scheduling Order (Dkt. 15) shall be amended.

## END OF OPINION##